USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
 SHANNON GARRETT,

                              Plaintiff,                                          **ORDER**

                  -against-                                         **1:17-CV-07826 (KHP)**


URBAN OUTFITTERS, INC.,

                              Defendant.
-------------------------------------------------------------------X
**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

This matter is before me on the parties' joint application to approve the parties'

settlement pursuant to *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015), to

the extent it waives claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

Unlike the typical *Cheeks* submission, the settlement before the Court settles forty-seven

individual actions filed in various federal district courts around the country.  The history of this

case and the settlement reached is set forth below.

**I.     *Background of Case***

Defendant Urban Outfitters, Inc. is a retailer focused on young adults.  It sells men's and

women's fashion apparel, footwear, beauty products and accessories, activewear and gear,

housewares, and music.  Its stores are located throughout the United States and elsewhere.

Plaintiff is a former Department Manager at an Urban Outfitters retail store in New York.  She

alleges that she worked an average of 42.5 hours per week doing nonexempt, largely manual

labor to ensure that the store was clean and stocked and that customers received the attention

they needed on the selling floor and at the cash register.  Her complaint asserts that she was

misclassified as exempt and denied overtime pay for hours worked in excess of 40 each week in violation of the FLSA and state law.

In 2013, Plaintiff joined a collective action brought in the Eastern District of New York encaptioned *McEarchen v. Urban Outfitters, Inc.*, No. 13-cv-3569, in which the plaintiffs claimed, among other things, that Defendant violated the FLSA by misclassifying all of its Department Managers as exempt from overtime pay and failing to pay them overtime. Pursuant to 29 U.S.C. § 216(b), Magistrate Judge James Orenstein authorized notice to be sent to Department Managers around the country, resulting in approximately 165 individuals joining the action.  *See McEarchen*, No. 13-cv-3569, Docket Entry ("DE") 34 (Jan. 31, 2014).  The parties then engaged in extensive discovery concerning Defendant's policies and practices relating to store operations, responsibilities and expectations of Department Managers, Defendant's decision to classify Department Managers as exempt, and each of the plaintiff's duties, hours, and pay.  Defendant then moved to decertify the collective on the grounds that the plaintiffs who had opted-in were not all similarly situated.  On September 6, 2017, the court granted Defendant's motion and dismissed the opt-in plaintiffs' claims without prejudice.  *McEarchen*, No. 13-cv-3569 (RRM) (JO), 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017) (adopting Report and Recommendation).

Following that decision, 44 named plaintiffs in the *McEarchen* case filed individual FLSA lawsuits in 20 different district courts scattered across the country, while the 3 named plaintiffs who initiated the *McEarchen* case continued to litigate their individual claims in that action. Four individual cases were filed in the Southern District of New York including *Babb v. Urban Outfitters, Inc.*, No. 17-cv-8526, *Cosby v. Urban Outfitters, Inc.*, No. 17-cv-8516, *Wakefield v.*

*Urban Outfitters, Inc.*, No. 17-cv-8543, and the instant action.  This Court held an initial case

management conference on February 12, 2018 at which it requested that the parties

participate in a settlement conference to discuss a global resolution of the claims pending in

this District and other districts.  Counsel for the parties met with this Court on April 16, 2018 to

begin discussions about a potential global resolution of all 47 individual cases.

In connection with settlement discussions, the parties submitted detailed information to

this Court concerning each of the 47 plaintiffs, including their respective store locations, work

history, alleged overtime hours, and pay rates.  This Court also discussed the merits of each

plaintiff's individual case with their counsel and the merits of Defendant's defenses.  At this

Court's direction, the parties jointly prepared a spreadsheet for *in camera* review including key

information about each of the 47 individual plaintiffs and competing computations of their

alleged damages.  The parties also provided detailed information to this Court about discovery

and other motion practice conducted in the *McEarchen* case and with respect to individual

plaintiffs.  This Court also reviewed the procedural history and all decisions issued in the

*McEarchen* case.

Settlement discussions were protracted.  This Court met in person and over the phone

with counsel for the parties no fewer than eleven times.  This Court also reviewed and

discussed various settlement terms exchanged by the parties as part of its facilitation of the

settlement discussions.  Ultimately, after much effort, the parties reached a resolution of all 47

claims.  To conserve judicial resources, as part of the settlement agreement the parties agreed

to submit stipulations of dismissal without prejudice in 45 of the individual actions and to the

tolling of the statute of limitations of each individual's claims through the date that their global

3

settlement is approved or rejected for *Cheeks* purposes by this Court.  Only the three individual

plaintiffs' claims in the *McEarchen* action and this action remain pending on any court's docket.

The parties also consented to my jurisdiction in the instant action pursuant to 28 U.S.C. § 636(c)

such that this action is before me for all purposes.

## II.    *Settlement Terms*

Under the terms of the settlement, Defendant will pay a total settlement of $264,000

(less applicable withholding) to the 47 individual plaintiffs.  Ms. Garrett will receive $686.43

under the settlement.  The amounts paid to other individuals vary based on their length of

service, alleged overtime hours, and pay and are set forth on a schedule to the settlement

agreement.  The highest payout under the settlement is $12,708.80.[1]  Ms. Garrett's payout is

low because she worked only 10 weeks in the applicable statutory period.  In contrast, the

individual receiving the highest payout worked 185 weeks in the applicable statutory period.

Additionally, Ms. Garrett had less seniority and, thus, a lower pay rate, than the individual

receiving the highest payout.

Defendant does not admit to liability in connection with the settlement, and the

settlement is not evidence that Urban Outfitters violated the wage and hour laws with respect

to any of the individual plaintiffs.  The settlement agreement provides for each individual

plaintiff to sign a release of all wage and hour claims, as well as all claims that were asserted

or could have been asserted against Defendant based on the factual allegations in their

individual lawsuits.

---

[1] The three plaintiffs in the *McEarchen* case will receive the following:  McEarchen-$9,168.77; Lawson-$4,530.45; Wolfe-$3,020.30.

The parties have agreed to a range within which they will settle for attorneys' fees and to submit the issue of attorneys' fees and costs to a Magistrate Judge for final resolution. The parties further agree that they will accept the decision of the court as to fees' and costs as final and binding and that they will have no right to appeal the Magistrate Judge's decision on fees and costs, subject to the award being within the stipulated range.

Assuming court approval of the settlement agreement, the parties stipulate to dismissal of this action (and the other individual actions) with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Rule 41").

### III.    *Legal Standard for Approval of FLSA Settlements*

The FLSA sets forth the minimum wage and overtime that an employee must be paid, as well as specific exemptions from its requirements. The U.S. Supreme Court recognized that the statute was designed to protect "certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Since then, courts have recognized the unique policy considerations underlying the FLSA and the importance of deterring employers from exerting undue pressure on low wage employees to compromise valid wage claims. Citing these concerns, the Second Circuit has held that settlements of FLSA claims in which the parties terminate the action via a stipulation of dismissal with prejudice pursuant to Rule 41 require approval of the district court or the U.S. Department of Labor to take effect. *Cheeks*, 796 F.3d at 206.

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve *bona fide* disputes." *Johnson v. Brennan*, No. 10-cv-

4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (citations omitted); *see also Babayeva v. Halstead Mgmt. Co., LLC*, No. 16-cv-3794 (RA), 2018 WL 5997919, at *1 (S.D.N.Y. Nov. 15, 2018) (approval of settlement appropriate when it "reflect[s] a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching") (internal quotation marks and citations omitted); *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (parties must demonstrate settlement is "fair and reasonable"). This fairness standard is used when a court evaluates an individual or a collective settlement of FLSA claims. *Quow v. Accurate Mech. Inc.,* No. 15-cv-9852 (KHP), 2018 WL 3368673 (S.D.N.Y. July 10, 2018); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-5669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). [2]

There are five factors relevant to an assessment of the fairness of an FLSA settlement including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between

---

[2] The Court notes that the standard for approval of a class settlement under Federal Rule of Civil Procedure 23(e), though higher than for approval of an FLSA collective settlement, is whether the proposed settlement is "fair, reasonable and adequate." The factors courts look at in making this determination were set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Although not directly applicable here, this Court is mindful of these factors nonetheless to the extent they provide a helpful guidepost in analyzing the fairness of the global settlement presented to this Court.

experienced counsel; and (5) the possibility of fraud or collusion.  *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc*'y, No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)) (other citations omitted).  The settlement here satisfies these criteria.[3]  The Court addresses each of these so-called *Wolinsky* factors below.

    **IV.**    ***Discussion***

    Turning first to the plaintiffs' possible range of recovery, the Court finds that the settlement is fair and reasonable.  This Court has fully analyzed the range of possible recovery in Garrett's case, as well as those of the other 46 individual plaintiffs who participated in the global settlement.  As noted above, the parties submitted a detailed spreadsheet to this Court with information pertaining to each plaintiff's dates of employment during the relevant statutory period, alleged overtime hours, and pay rates.  If the Court were to find that each of the plaintiffs was misclassified and accepted their overtime hours as alleged in their individual complaints, plaintiffs' maximum recovery would be in excess of $700,000.  However, if the Court were to reject plaintiffs' misclassification theory, the plaintiffs would recover nothing.  Still further, if the Court were to find that some of the plaintiffs were misclassified, it might conclude that the overtime hours alleged are inflated.  In this last scenario, some plaintiffs would recover nothing and others less than the amount sought in their respective complaints.

---

[3] While this Court technically has jurisdiction only over the instant matter, and this Court's holding applies to Ms. Garrett's case only, this Court is of the view that the *Wolinsky* factors weigh in favor of approval of the global settlement generally.  Because of the unique nature of the settlement process and this Court's involvement in it, the undersigned has included information about other plaintiffs taking part in the settlement to the extent the parties wish to provide a copy of this opinion to any other court overseeing or that has overseen the separate actions the settling plaintiffs filed in the wake of the *McEarchen* decertification decision.

The settlement before this Court reflects an average allocation of more than $5,600 per plaintiff.[4]  If using a fluctuating workweek method for computing damages, plaintiffs will receive 124% of their underlying damages assuming 10 overtime hours per week – the approximate amount of overtime that most of the plaintiffs asserted they worked on average.[5]  *See* 29 C.F.R. § 778.114(a).  The settlement amount represents an average of 43% of plaintiffs' underlying damages if overtime is computed by multiplying the hours worked in excess of forty in a week and 1.5 x the employee's regular rate of pay – a more typical method of computing overtime.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.108; *see also Walling v. Yougerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (discussing components of regular rate).  It is unclear which method would be applied in computing damages in this case.  *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942) (sanctioning use of fluctuating workweek method for calculating overtime); *Banford v. Entergy Nuclear Operations, Inc.*, 649 F. App'x 89 (2d Cir. 2016) (recognizing that every circuit court to consider the question has found that the fluctuating workweek method may be used to calculate damages when employees were misclassified as exempt from the FLSA, but declining to conclusively rule on the question); *Klein v. Torrey Point Group, LLC,* 979 F. Supp. 2d 417, 434–39 (S.D.N.Y. 2013) (finding FWW retroactively applicable in misclassification cases based upon

---

[4] A few of the plaintiffs are class members in another litigation that recently settled and will receive the benefit of the settlement that provides the greatest payout.  In other words, if they would receive more under the global settlement presently before this Court, they will receive the difference between the amount received in the other settlement and the allocation amount in this global settlement.

[5] Under a fluctuating workweek method of payment, subject to certain conditions, an employee may be paid a fixed salary that serves as compensation for all hours worked if it is sufficient to compensate the employee for all straight time hours worked at a rate not less than the minimum wage and the employee is paid an additional one-half of the regular rate for all overtime hours.  *See* 29 C.F.R. § 778.114(a).

*Missel* ); *Costello v. Home Depot USA, Inc.,* 944 F. Supp. 2d 199, 202–08 (D. Conn. 2013)

(rejecting retroactive application of FWW method).

This recovery is a very good recovery in light of the significant risks plaintiffs face – the

third *Wolinsky* factor.  Defendant vigorously litigated the *McEarchen* case and has vigorously

litigated this case.  At all times Defendant has maintained that Department Managers were

appropriately classified as exempt, although as the court noted in *McEarchen*, the record

included evidence that "Urban was aware that much of a [District Manager's] time was spent

performing non-exempt work." *McEarchen v. Urban Outfitters, Inc.*, No. 13-cv-3569 (RRM)

(JO), 2017 WL 9481019, at *2 (E.D.N.Y. Mar. 7, 2017).  Ultimately, the court in *McEarchen*

found that differences between and among the opt-in plaintiffs that were material to a

determination as to whether they were misclassified required decertification of the collective.

*Id*., at *9 (recognizing differences in duties and responsibilities).  In other words, the court

recognized the possibility that some plaintiffs might have been misclassified based on their

duties, whereas others might have been properly classified as exempt, and that classwide

proof could not be used to determine this issue as to all plaintiffs.  Thus, the risk that at least

some plaintiffs might not succeed in their misclassification claim is not insubstantial.

Plaintiffs face other risks in the litigation as well including their contention that their

misclassification, if proven, was willful.  Recovery of liquidated damages is premised on a

showing of willfulness.  29 U.S.C. §§ 255(a), 259, 260.  Willfulness exists when the employer

either knew or showed reckless disregard as to whether its conduct was prohibited by the

FLSA. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988); *Trans World Airlines, Inc. v.

Thurston*, 469 U.S. 111, 127 (1985).  Although Defendant bears the burden of demonstrating

that it took sufficient active steps to ascertain and comply with the requirements of the FLSA,

the issue of willfulness is often an issue of fact. *Padilla v. Sheldon Rabin, M.D., P.C.,* 176 F.

Supp. 3d 290, 304 (E.D.N.Y. 2016) (issue of willfulness was fact issue for jury); *Kadden v.

VisuaLex, LLC*, 910 F. Supp. 2d 523, 537 (S.D.N.Y. 2012) (declining to award liquidated

damages; employer must demonstrate "misclassification [was made] 'in good faith' and with

'reasonable grounds' for believing that the employee was exempt") (quoting 29 U.S.C. § 260).

To the extent Urban Outfitters could establish a good faith defense, plaintiffs' damages would

be substantially less.  Additionally, as noted above, the damages each plaintiff ultimately

might recover is in question given that Defendant also disputes the hours of overtime claimed

and argues that any overtime awarded would have to be computed under the fluctuating

workweek method.

The second *Wolinsky* factor is clearly met.  The settlement will entirely avoid the

burden, risks, expenses, and aggravation of continued litigation.  The parties expended

significant sums litigating the *McEarchen* case, which then spawned more than 40 separate

actions across the country.  Each of these individual cases would require attendance at court

conferences, depositions, and separate briefing.  The costs of litigating would far exceed the

potential recovery of the individual plaintiffs, and the outcomes would remain uncertain as

most would be determined by a jury.

The fourth *Wolinsky* factor is also met.  The Court has previously recognized the

experience and expertise of the Outten & Golden LLP firm in the area of employment law,

which was demonstrated again in this action.  *See Williams v. Metro-North R.R. Co.*, No. 17-cv-

3847 (JGK), 2018 WL 3368713 (S.D.N.Y. July 9, 2018) (adopting Report and Recommendation

dated June 28, 2018).  Plaintiffs also were represented by the Klafter Olsen & Lesser LLP firm.

The lawyers from this firm also were extremely knowledgeable about the FLSA and zealously

represented the plaintiffs.  Similarly, defense counsel, from the firm of  Drinker Biddle & Reath

LLP, were very experienced and ably represented Defendant, achieving decertification of the

*McEarchen* case.  It also is clear from this Court's heavy involvement in and oversight of

settlement discussions that the settlement is the product of arm's-length bargaining.  The fifth

*Wolinsky* factor also is met; there are no factors here that suggest the existence of fraud.  The

fact that plaintiffs' counsel negotiated a settlement for their clients separately from their own

attorneys' fees and costs underscores this conclusion.  *See In re MetLife Demutualization Litig.*,

689 F. Supp. 2d 297, 341 (E.D.N.Y. 2010).

This Court also is unaware of any facts that weigh against approval of the settlement.

Plaintiffs' counsel has represented that they are unaware of any ongoing FLSA violations.  Also,

Defendant reclassified the Department Manager position as non-exempt in December 2016 – a

fact that eliminates concerns about Defendant's treatment of employees in this position.

Indeed, the potential for inconsistent results in the 47 separate lawsuits spawned by

*McEarchen* could complicate the development of the law on the exemption question at issue in

the cases.  This also weighs in favor of approval of the settlement.

Finally, the settlement agreement is consistent with terms approved by courts in the

Second Circuit and does not contain any terms that would require disapproval.  For example,

the plaintiffs' unilateral release is not overly broad, and the settlement agreement contains

neither a confidentiality nor a non-disparagement clause.  *See, e.g., Santos v. Yellowstone*

*Props., Inc.*, No. 15-cv-3986 (PAE), 2016 WL 2757427, at *1, 3 (S.D.N.Y. May 10, 2016); *Hyun v.*

*Ippudo USA Holdings*, No. 14-cv-8706 (AJN), 2016 WL 1222347, at *3-4 (S.D.N.Y. Mar. 24, 2016); *Souza v. 65 St. Marks Bistro*, No. 15-cv-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015).

<u>**CONCLUSION**</u>

For all the reasons set forth above, this Court approves the settlement in this matter.  In light of the attorneys' fee procedure agreed to by the parties and approved by this Court, this case will remain open until the conclusion of that process.  The parties are directed to notify this Court when their fee application has been filed and to submit a stipulation of dismissal with prejudice within 14 days after the conclusion of the fee determination process.

**SO ORDERED.**

Dated: March 13, 2019
       New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge